United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO MARTINEZ, et al., <br> Plaintiffs, <br> v. <br> CITY OF PITTSBURG, et al., <br> Defendants. | Case No. 17-cv-04246-RS (KAW) <br><br> **ORDER REGARDING JOINT DISCOVERY LETTER** <br> Re: Dkt. No. 41 |

On July 26, 2017, Decedent Humberto Martinez's successors in interest filed the instant wrongful death suit against Defendants City of Pittsburg, City of Pittsburg Police Chief Brian Addington, and Officers Ernesto Mejia, Jason Waite, Willie Glasper, Gabriel Palma, Jonathan Elmore, and Patrick Berhan. (Compl. ¶ 1, Dkt. No. 1.) On May 18, 2018, the parties filed a joint letter concerning Defendants' subpoenas to the Contra Costa County Sheriff and Contra Costa Regional Medical Center, seeking Decedent's arrest and medical records. (Joint Discovery Letter at 1, Dkt. No. 41.)

Having considered the papers filed by the parties, and for the reasons set forth below, the Court will allow Defendants to seek the discovery sought by the subpoenas.

## I. BACKGROUND

On July 26, 2016, Defendants Mejia, Glasper, and Waite saw Decedent leave his friends' home and get into his vehicle. (Compl. ¶ 25.) The officers ran a license-plate check on Decedent's vehicle, and learned that the car's registration had expired. (Compl. ¶ 26.) Defendant Mejia initiated a traffic enforcement stop; although Defendant Mejia asserts that he activated his unmarked car's light and siren, Decedent allegedly kept driving. (Compl. ¶ 28.) The officers followed Decedent for a minute and a half before Decedent drove back to his friends' house.

(Compl. ¶ 30.) Decedent, who was dressed in a sleeveless t-shirt and shorts, got out of the car and ran towards the house.

Defendants Mejia, Glasper, and Waite followed Decedent. (Compl. ¶ 31.) Defendant Mejia pulled out his Taser and fired it at Decedent in probe mode, hitting him in the upper left buttock. Defendants Mejia and Glasper pursued Decedent through the garage and into the kitchen, where one of the officers grabbed Decedent and tackled him to the kitchen floor. (Compl. ¶¶ 31-33.) Decedent ended up in a face-down, prone position with Defendant Mejia's arm around his neck. (Compl. ¶ 33.) Defendant Mejia got on top of Decedent's upper half while Defendant Glasper was on top of Decedent's lower half. (Compl. ¶ 34.) Defendants allegedly began beating Decedent, including at least one punch to the face, three punches to the torso, elbow strikes to the abdomen, and knee strikes to the torso. (Compl. ¶ 35.) Throughout this, Defendant Mejia still had his arm around Decedent's neck. (Compl. ¶ 36.) Defendants Waite, Palma, Berhan, and Elmore then arrived. (Compl. ¶¶ 40-41.) Defendant Palma allegedly began punching Decedent's torso, Defendant Berhan repeatedly shot Decedent with a Taser in probe mode, and Defendant Elmore punched and kneed Decedent. (Compl. ¶¶ 41-42.)

Defendants Waite and Palma handcuffed Decedent. (Compl. ¶ 43.) Defendants Waite, Palma, Berhan, and Elmore then allegedly put their combined weight on top of Decedent for several minutes. (Compl. ¶ 43.) Decedent turned blue and became unresponsive. (Compl. ¶ 44.) Decedent was taken to the hospital, where he was pronounced dead. (Compl. ¶ 44.)

Decedent's autopsy showed blunt force injuries to the head, neck, torso, and extremities; internal soft tissue injuries; evidence of mechanical obstruction of respiration; and evidence of Taser deployments. (Compl. ¶ 49.) The coroner determined that the cause of death was "Probable Mechanical Obstruction of Respiration Complicated by Carotid Sinus Reflex Stipulation" lasting for minutes, due to "Carotid Choke Hold Deployed During Arrest." (Compl. ¶ 50.)

Plaintiffs then filed the instant wrongful death suit, asserting claims under 42 U.S.C. § 1983, as well as for violation of California's Bane Act, negligence, and assault and battery. (Compl. at 18-27.) Plaintiffs seek damages including loss of familial relationships, loss of economic support, and pain and suffering. (*See* Compl. ¶ 57.)

## II. LEGAL STANDARD

Under Rule 26, in a civil action, a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Additionally, the court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 45 also specifically provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. Rule 45 provides, among other things, that a party may command a non-party to testify at a deposition. Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970); Fed. R. Civ. P. 34(a)).

## III. DISCUSSION

Defendants seek to enforce two subpoenas. The first is directed at the Contra Costa County Sheriff, and seeks all documents "relating to any arrests, conviction, sentencing, time in custody, medical treatment in custody, terms of probation and probation violations of [Deceased] from January 1, 2006 to July 26, 2016." The second is directed at the Contra Costa Regional

Medical Center, and seeks all documents relating to "medical history, social history, and medical examinations, complaints, diagnoses, and/or treatment of [Decedent] from January 1, 2010 to July 26, 2016." (Discovery Letter at 1.)

### A. Medical Records

"The test of whether Defendants should obtain access to [Decedent]'s medical records is not relevance -- the records may be highly relevant -- but the test is whether the privilege has been waived by putting the privileged information 'at issue.'" *EEOC v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006). In other words, "privacy rights in medical records are neither fundamental nor absolute. [Citations.] When a plaintiff places his medical status at issue, the expectation to privacy to those conditions is diminished." *Lawrence v. City & Cty. of S.F.*, Case No. 14-cv-820-MEJ, 2015 WL 1093081, at *3 (N.D. Cal. Mar. 10, 2015).

Here, the parties' primary dispute is whether the time period and scope of the records sought is overly broad. (Discovery Letter at 2-3.) Plaintiffs argue that they have not put Decedent's entire medical history at issue. (*Id.*) Defendants respond that they are entitled to the medical records because Plaintiff had numerous lifelong, pre-existing health conditions that could have been the cause of Decedent's death, including his high methamphetamine intoxication, enlarged/pre-existing damage to his heart, and obesity. (*Id.* at 3.) Defendants also contend that the medical records are relevant to determining wrongful death damages, which considers the life expectancy of the deceased. (*Id.* at 4.)

In *Boyd v. City & County of San Francisco*, the district court held that the defendants were entitled to all of the decedent's medical records in a wrongful death suit. No. C-04-5459 MMC (JCS), 2006 WL 1390423, at *1, 4-5 (N.D. Cal. May 18, 2006). As an initial matter, the district court found that the medical records were relevant to the wrongful death claim because "[u]nder California law, medical conditions that might affect life expectancy can be considered in determining wrongful death damages." *Id.* at *4; *see also Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980) ("The life expectancy of the deceased is a question of fact for the jury to decide, considering all relevant factors including the deceased's health, lifestyle and occupation."). The district court also found that any physician-patient privilege was waived because the plaintiffs had

"placed those records in issue by seeking damages that may be affected by the [decedent]'s medical condition. Therefore, any privilege that might exist under California law as to [the] medical records has been waived." *Id.* at *5.

Likewise, in *Nehad v. Browder*, the district court found that the defendants were entitled to the decedent's psychiatric and medical history. Case No. 15-cv-1386 WQH NLS, 2016 WL 1428069, at *2 (S.D. Cal. Apr. 11, 2016). The district court determined that the records sought were relevant to the extent it affected his relationship with his parents, "which in turn would inform the extent to which [the p]laintiffs incurred a loss of companionship and society." *Id.* By putting the familial relationship at issue, the plaintiffs had waived any privilege. *Id.* at *5.

The Court finds that Defendants are entitled to the medical records sought. By putting Decedent's cause of death, his relationships with his family, and his life expectancy at issue, Plaintiffs have waived the expectation of privacy. Plaintiffs concede that Defendants are entitled to medical records concerning Decedent's methamphetamine use, as well as any conditions which would have shortened his life expectancy or affected his relationships with his mother and children. (Discovery Letter at 3.) The Court also agrees with Defendants that any medical conditions that would go to the cause of death is also at issue in this case, as Plaintiffs allege Defendants' actions caused Decedent's death. (*See id.*)

Plaintiffs suggest that the Court should enter a First Look order for "Plaintiffs' counsel to remove records that do not relate to the claims and defenses in this case, and to provide a detailed privilege log for all redactions." (Discovery Letter at 5.) The Court, however, does not believe it appropriate for Plaintiffs' counsel to determine what is relevant to this case and Defendants' defenses.[1] Plaintiffs also suggest limiting the records to two years before Decedent's death; as Defendants point out -- and Plaintiffs do not dispute -- Decedent's medical history included

---

[1] Plaintiffs cite to *Johnson v. Northwest Airlines, Inc.*, Case No. 08-cv-2272-VRW, 2009 U.S. Dist. LEXIS 30731 (Mar. 30, 2009), in support of a first look order. (Discovery Letter at 5.) Notably, in *Johnson*, the district court found that "Plaintiff's counsel has now had an opportunity to perform the difficult task of filtering the discoverable from the non-discoverable, but has not done so adequately. Given the court's lack of expertise and training in medicine, there is no reason to believe the court would do much better." *Johnson*, 2009 U.S. Dist. LEXIS 30731, at *12. The district court thus required that the plaintiff produce all of the disputed medical records, with the exception of OB/GYN and dental records.

5

lifelong pre-existing conditions, and Defendants are entitled to a complete view of Decedent's health.

### B. Criminal History

Plaintiffs argue that Defendants are not entitled to Decedent's jail history to the extent it is unrelated to his relationships with his mother and children. (Discovery Letter at 3.) Defendants respond that his criminal history, particularly his prior drug use, is relevant to his wrongful death claim. (*Id.* at 4.) Defendants also contend that Decedent's criminal history is relevant to the issue of damages, as it affects his earnings potential and ability to provide economic support, as well as his relationship with his family because "Defendants believe Decedent's lengthy criminal history may show he had little or no contact from or with his family (mother and children) at various times in his life." (*Id.* at 4-5.) Furthermore, Defendants argue that Decedent's criminal history is relevant to show that Decedent may have intended to escape and resist the police to avoid returning to jail due to a probation violation, which would rebut Plaintiffs' argument that Decedent was not resisting arrest or trying to flee from the police. (*Id.* at 5.)

The Court agrees with Defendants that Decedent's criminal history is relevant to this case beyond how it affected Decedent's relationship with his mother and children. Thus, Defendants are entitled to this information. Moreover, the Court notes that to the extent Plaintiffs assert a privilege exists as to Decedent's criminal history, they do not appear to identify any authority; instead, their authority primarily concerns medical records. Thus, Plaintiffs have not provided a reason why Defendants should not be permitted to discover this information.

### IV. CONCLUSION

For the reasons stated above, the Court will require production of the documents requested by the subpoenas in full.

IT IS SO ORDERED.

Dated: June 13, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge